## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

In re:

| | |
|---|---|
| **Kim Petersen** | **Case No.  17-01612-als7** |
| **Blanca Estela Gaytan** | **Case No.  17-01831-als7** |
| **Enrique Aguilar-Lara** | **Case No.  17-01869-als7** |
| **Jose Vargas and Bertha Vargas** | **Case No.  17-02064-als7** |

Debtor(s).

## MEMORANDUM OF DECISION
### (date entered on docket: August 23, 2018)

The above captioned cases involve Iowa residents that were clients of the VandenBosch Law Firm ("Law Firm") located in Omaha, Nebraska.  Actions taken by counsel involving these clients resulted in the Office of United States Trustee ("UST") filing Motions for Examination of Fees and for Refund of Fees and/or Civil Penalty and the Court's Order to Show Cause.

## FACTUAL BACKGROUND

Antonio VandenBosch is an attorney licensed to practice in Nebraska and is the owner and manager of the firm that bears his name.  Attorneys David Reed and Josh Sleper also worked at the firm.  VandenBosch routinely represented clients in chapter 7 cases in Nebraska.  Sleper was the only attorney at the firm licensed to practice in Iowa.  Word of mouth referrals and radio advertising have resulted in the Law Firm being well known in Spanish speaking communities in the area.

Valentina Saavedra has focused ten years of her paralegal practice on consumer law.  She is certified as a virtual bankruptcy paralegal and speaks fluent Spanish.  The Law Firm has routinely hired her on a contract basis to assist with the preparation and filing of bankruptcy

documents and to assist with its Spanish-speaking clients.  Saavedra served as a paralegal in all of the cases relevant to this Decision.

The record details the standard procedure followed for all bankruptcy files involving Saavedra and the Law Firm.  An attorney meets with the clients to review their financial condition and discuss whether filing bankruptcy is a suitable option.  Clients supply the attorney the information necessary to complete the schedules which the Law Firm then provides to Saavedra.  She prepares the schedules, follows up with the clients to obtain any additional information needed, reviews the documents with the clients, makes any necessary revisions and obtains the required signatures.  Once these tasks are completed, the attorney responsible for the file does a final review of the documents and authorizes the case to be filed.  Saavedra provides no legal advice, but she does explain the procedures and the schedules to the clients.  If specific legal questions need to be addressed she contacts the assigned attorney.

Sometime in late spring or early summer of 2017, Sleper informed the Law Firm that he was going to leave for a government immigration job.  The timeframe for these plans was fluid because his offer was conditional on the completion of background checks.  At that time Sleper was representing two Iowa residents related to their anticipated bankruptcy filings:  Kim Petersen and Blanca Gaytan[1].  Aguilar-Lara, also an Iowa resident, executed a retainer agreement for bankruptcy representation before Sleper left.  The Law Firm's representation of the Vargases appears to be the subject of a retainer agreement that was executed after Sleper had departed.[2] None of these bankruptcies had been filed before Sleper left the Law Firm ("Iowa cases").

Realizing that the Law Firm would need an attorney licensed in Iowa to assist in filing the Iowa cases, Reed called Larry Melcher a Council Bluffs lawyer that practiced in bankruptcy.[3] The exact details of the conversation and what was agreed to between the attorneys during their telephone conversation is less than clear.  The arrangement was not reduced to writing and their recollections of key terms differ.  The Law Firm explains that Reed asked Melcher if he would file the cases and attend the 341 meeting in exchange for hourly compensation, which he estimated to be approximately $400 per case.  Melcher, on the other hand, believed he would

---

[1] Petersen's retainer agreement was not submitted as an exhibit but there is no dispute that she was a client of the firm.  Blanca Gaytan's retainer agreement is dated October 1, 2016.

[2] The actual date Sleper stopped working at the Law Firm  is not clearly established in the record.

[3] According to their bankruptcy petitions, each of the Iowa clients resided near Council Bluffs, Iowa which is directly across the Missouri River from Omaha, Nebraska.

receive $400 for attending Petersen's 341 meeting and the other 3 cases would be directly referred to him for filing. Melcher states he has received no payment for his involvement in the Iowa cases from any source. The Law Firm states that it has received no invoices from Melcher requesting payment.

The UST filed identical motions in each of the Iowa cases that raise three issues related to the actions of the Law Firm and Melcher: (1) that counsel violated the disclosure requirements under Bankruptcy Rule 2016 related to fee sharing; (2) that the fees paid to counsel were excessive because the amount charged was not commensurate to the value of services provided; and (3) that counsel's conduct was in violation of 11 U.S.C. 526(c). The relief requested asks the Court to order disgorgement of all fees paid, impose civil penalties and to address the Law Firm's unauthorized practice of law. Melcher filed a response to the Motions. The Court issued an Order to Show Cause against the Law Firm related to its involvement in the Iowa cases. An evidentiary hearing was conducted and upon receipt of the transcript the matters were deemed fully submitted.

## DISCUSSION

1.      Fees and Fee Sharing

The Bankruptcy Code states in relevant part:

> (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

> (b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment . . .

11 U.S.C. §329 (2018); See also Fed. Rule of Bank. Pro. 2017 (2018). The disclosure requirements imposed by section 329 are "mandatory, not permissive." *In re Sandpoint Cattle Co., LLC*, 556 B.R. 408, 421 (Bankr. D. Neb. 2016) (citation omitted). "Debtor's counsel [must]

lay bare all its dealings . . . regarding compensation. . . . Counsel's fee revelations must be direct and comprehensive. Coy, or incomplete disclosures . . . are not sufficient." *Id.* quoting *In re Rio Valley Motors Co., LLC,* 2007 WL 2492685, at *2 (Bankr. D.N.M. Aug. 29, 2007) (quoting *Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.*), 210 B.R. 844, 848 (10th Cir. BAP 1997)).

Disclosure of compensation required under 11 U.S.C. §329 is accomplished as follows:

> Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share the compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.

Fed. Rule of Bank. Pro. 2016(b) (2018). The required information is generally conveyed on Official Form 2030 filed with the petition and schedules. These Forms were filed in each of the Iowa cases and correctly stated the amount of the fees paid to the Law Firm[4] but contained other serious errors. Melcher's name appears over the Law Firm's information making it appear that: (1) he is somehow associated with that office, which he is not; and (2) that he received payment of fees which he did not. No supplemental or amended fee disclosures were filed in any of the Iowa cases.

"Disgorgement of fees that have been paid is a serious sanction. When it is used, it generally is done so as a sanction for egregious conduct." *In re Midland Props. II, LLC,* No. BK16-80487, 2016 Bankr. LEXIS 2438, at *25 (Bankr. D. Neb. June 29, 2016) citing *In re Miller Auto. Group, Inc.*, 521 B.R. 323, 333 (Bankr. W.D. Mo. 2014). No showing of harm is required for this remedy to be imposed. *In re Johnson*, No. 05-30023, 2006 WL 3242692 at *11 (Bankr. D.S.D. Nov. 7, 2006), citing *Briggs v. LaBarge (In re McGregory)*, 340 B.R. 915, 922–23 (B.A.P 8th Cir. 2006). Further, disgorgement is not limited to circumstances of willful misconduct by an attorney:

---

[4] See Statements of Financial Affairs question number 16.

> While a more 'technical breach' of the attorney's obligations under the Bankruptcy Code and the Bankruptcy Rules may not warrant denial of all compensation, it is clear that a finding of willfulness is not required; '[d]isgorgement may be proper even though the failure to [comply with the Code and Rules] resulted ... from negligence or inadvertence.'

*In re Chatkhan*, 496 B.R.687, 695 (Bankr. E.D.N.Y. 2012) (quoting *Vergos v. Mendes & Gonzales PLLC (In re McCrary & Dunlap Const. Co., LLC)*, 79 Fed. Appx. 770, 779 (6th Cir. 2003). The case law is clear that disgorgement of fees is appropriate upon any failure to accurately disclose compensation and the sharing of compensation. See *Schroeder v. Rouse (In re Redding)*, 263 B.R. 874, 880 (B.A.P. 8th Cir. 2001).

The Law Firm admits that the Official Forms 2030 filed in the Iowa cases are not correct. All fees paid to the Law Firm by the clients in the Iowa cases shall be disgorged and refunded to those individuals within 30 days[5] from the date this order is entered on the docket.[6]

## 2.      Rule 9011 and other Civil Penalties

Bankruptcy courts have the inherent authority to discipline and sanction attorneys who appear before it to prevent an abuse of the bankruptcy process. *Needler v. Casamatta (In re Miller Auto. Grp. Inc.),* 536 B.R. 828, 835 (B.A.P. 8th Cir. 2015); *In re Burnett,* 450 B.R. 116, 132 (Bankr. E.D.Ark. 2011). Fed. R. Bankr. P. 9011; 11 U.S.C.S. § 105.

Rule 9011 requires that filings be signed by the attorney of record in the case. By signing the petition, the attorney is certifying "to the best of that person's knowledge, information and belief, formed after a reasonable inquiry under the circumstances… (2) the claims…are warranted by existing law…and (3) the allegations and factual contentions have evidentiary support." Fed. R. Bankr. P. 9011(b); *Briggs v. LaBarge (In re Phillips),* 317 B.R. 518, 522 (B.A.P. 8th Cir. 2004). Documents in federal court are filed electronically and signatures are facilitated by use of a login and password ("credentials").[7] For this reason, the use of filing credentials is necessarily restricted:

---

[5] Testimony at the hearing indicated that the Law Firm may have already voluntarily refunded some or all of its fees to the clients in the Iowa case.

[6] This result renders an examination and determination of whether the fees charged were excessive unnecessary and no findings are made on that separate issue.

[7] "A filer's login name and password are the filer's signature for purposes of Local Rule 11 and the applicable Federal Rules of Civil, Criminal, and Appellate Procedure. All documents filed electronically must include a

> 1. A lawyer must not knowingly permit or cause to permit his or her login/password to be utilized by anyone other than an authorized employee of his or her office.
> 2. Once registered, a lawyer is responsible for all documents filed with his or her login/password
> . . .
> 5. Electronic filings are presumed to have been made by the person or party whose login name and password have been used to make the electronic filing . . . If a login or password is lost, misappropriated, or misused, the responsible person mUST notify the Clerk, immediately of the loss, misappropriation, or misuse.[8]

Melcher informed the UST that his role was to attend the 341 meeting in Petersen and be paid $400 for this service; that all documents were going to be prepared by the Law Firm; and three other cases were going to be referred directly to him.  He contends that it was only after all of the Iowa cases were filed that he realized that his credentials had been used.  He further asserts that he was unaware that the Law Firm would file any cases under his name.  These positions are not supported by the record.

There is no factual dispute that Melcher provided his CMECF credentials and his Iowa [attorney] number to permit the filing of the Petersen case.[9]   During the UST's direct examination Melcher acknowledged that the use of his CMECF login and password would result in him receiving electronic notices in in each of the Iowa cases.  Accordingly, if Melcher was monitoring the electronic notices he was receiving from the Clerk of Court he should have realized as early as September 11, 2017 that his CMECF credentials were used to file the Gaytan case.  Communications between Saavedra, the Law Firm and Melcher regarding the progress in the Iowa cases indicate that Melcher should have been aware that additional filings were being filed in the same manner as the Petersen case.  At no point during this series of events did Melcher contact the Law Firm to clarify their agreement or request that it stop using his CMECF login and password.  It was not until late October 2017, and only after the UST's inquiry, that Melcher formally requested that Saavedra stop using his credentials.  In spite of that instruction, Melcher confirmed his approval for the Law Firm to file amendments in Gaytan's case.

---

signature block for the lawyer filing the document in the form set out in subsection C, below. A lawyer or a party who disputes the authenticity of a filer's signature on an electronically-filed document must file an objection to the signature within 14 days after the lawyer or party receives the NEF. If no timely objection is filed, the court will presume the signature to be authentic." The ECF Procedures Manual Southern District of Iowa (2017) (XII. Signatures).

[8] ECF Procedures Manual Southern District of Iowa (2017) (V. Obtaining Logins/Passwords)
[9] See email exchanges dated May 25 and 31, 2017 (UST Exhibit E and Law Firm Exhibit 3)

A court's authority to order sanctions requires a finding of deliberate conduct. *In re Foster,* 586 B.R. 62, 84 (Bankr. W.D. Wash. 2018). One of the standards used to make this determination is whether the actions were objectively reasonable at the time they were taken. *NAACP v. Atkins*, 908 F.2d 336, 339 (8th Cir. 1990) (citations omitted). Melcher knowingly and willingly permitted the Law Firm to use his CMECF credentials and continued to allow usage after it should have been apparent that additional cases were being filed. In doing so, Melcher effectively represented that he had fulfilled his statutory duties to the clients in the Iowa cases even though he did not: have any contact with the debtors, confirm their eligibility to file bankruptcy, or provide the required disclosures. The record is silent on whether he conducted any review of the debtors' eligibility or the accuracy of their schedules based upon the underlying documentation that was provided to him. Consequently, the Court is left with the impression that he did not. The Court concludes that Melcher's involvement in the Iowa cases did not meet the standard of reasonable inquiry, which constitutes a violation of Rule 9011.

At least one bankruptcy court has considered facts involving the improper use of CMECF filing credentials. *In re Paciocco*, No. 15-00302-KRH, 2015 Bankr. LEXIS 2971 (Bankr. E.D. Va. Sep. 3, 2015). After bankruptcy attorney Paciocco's license to practice law was suspended he approached Attorney Waldrop, who had no bankruptcy background, to assist him with his outstanding bankruptcy cases. With Waldrop's agreement, Paciocco established a CMECF account in Waldrop's name. Waldrop never accessed the account or knew his identification number. Using Waldrop's credentials Paciocco prepared and filed three new bankruptcy cases listing Waldrop as counsel of record. Waldrop did not prepare filings or meet the clients until the 341 Meeting. The compensation disclosure indicated Waldrop received $1,600 per case. But, in fact, Paciocco was receiving the majority of these funds and Waldrop was paid only a small fee in exchange for his 341 appearance. Waldrop maintained that he was unaware that Paciocco was filing new cases and the debtors were deemed to be ignorant of this arrangement as well. The bankruptcy court ultimately concluded that Paciocco was engaged in the unauthorized practice of law, violated the CMECF policies, violated bankruptcy code §§ 110, 329, 526(c)(2)(C), 707 and Bankruptcy Rule 9011.

There are important differences between *Paciocco* and the Iowa cases. First, the clients in the Iowa cases were represented and provided legal advice by licensed attorneys related to their bankruptcy filings. Second, they were all informed that Melcher needed to be involved due

to Sleper's departure.  These distinctions lead to this Court's determination that the penalties issued in *Paciocco* are not appropriate in the instant case.[10]

The purpose of a sanction is to deter similar conduct in the future.  *In re Miller Auto. Grp. Inc.,* 521 B.R. 323, 333 (Bankr. W.D. Mo. 2014).  After considering the evidence presented the Court is of the opinion that there is little likelihood that the conduct engaged in by the Law Firm and Melcher in the Iowa cases will be repeated.  Under similar circumstances courts have disgorged fees, revoked filing privileges and required additional attorney training.  *In re Kuykendall,* 501 B.R. 311, 321-22 (Bankr. S.D. Texas 2013).  Although the circumstances justify a penalty, none of these remedies are well suited to address Melcher's actions.[11]  The Court concludes that it is appropriate for a civil penalty to be assessed against Melcher in the amount of $1,000.00, which shall be paid to Iowa Legal Aid within 30 days of the date this Order is entered on the docket.


3.      11 U.S.C. §526(c)(5)

The UST contacted Melcher and the Law Firm based on their "concerns regarding fees and the nature of [the attorneys'] relationship" with the debtors following the filing of the Iowa cases.  The Bankruptcy Code establishes duties and restrictions that govern the relationships between the Law Firm and Melcher ("Debt Relief Agenc(ies)")[12] and the Iowa debtors ("Assisted Person(s)").[13]  According to the statute:

> (a) A debt relief agency shall not--
> (1) fail to perform any service that such agency informed an assisted person or prospective assisted person it would provide in connection with a case or proceeding under this title;

---

[10] Paciocco was (1) permanently enjoined from practicing bankruptcy law in E.D. Virginia; (2) enjoined from preparing bankruptcy petitions in a secretarial capacity; (3) had to refund the fees paid during his suspended practice; (4) pay damages to the debtors for their missed time at work to appear at the hearing; (5) and pay a civil penalty to the United States Trustee.  *In re Paciocco,* No. 15-00302-KRH, 2015 Bankr. LEXIS 2971 (Bankr. E.D. Va. Sep. 3, 2015).

[11] Of note is that since the filing of these cases Melcher's login and password, as well as those of all other registered e-filers in the Southern District of Iowa, were canceled.  New credentials have been established within the PACER system as part of the Court's conversion to the NextGen system.  Consequently, there is no concern that filings could continue under Melcher's prior account.

[12] ". . . any person who provides any bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration".  11 U.S.C. § 101(12A).  *Milavetz, Gallop & Milavetz, P.A. v. United States,* 559 U.S. 229, 130 S. Ct. 1324, 176 L. Ed. 2d 79 (2010).

[13] ". . . any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $186,825."  11 U.S.C §101(3)."  All of the debtors in the Iowa cases meet this definition.

(2) make any statement, or counsel or advise any assisted person or prospective assisted person to make a statement in a document filed in a case or proceeding under this title, that is untrue or misleading, or that upon the exercise of reasonable care, should have been known by such agency to be untrue or misleading;

(3) misrepresent to any assisted person or prospective assisted person, directly or indirectly, affirmatively or by material omission, with respect to--

    (A) the services that such agency will provide to such person; or

    (B) the benefits and risks that may result if such person becomes a debtor in a case under this title; or

(4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer a fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C.A. § 526 (2018). The UST argues that counsels' conduct in the Iowa cases ignored "the protections afforded debtors and the integrity of the Bankruptcy Code" and their arrangements regarding the Iowa cases were a repudiation of "their ethical and fiduciary obligations" which justifies civil penalties under 11 U.S.C. §526(c)(5). Specifically the allegations are that by filing an untrue 2016(b) disclosure Melcher misrepresented the services he was providing and that the Law Firm violated that same provision by making intentional misrepresentations about the scope of its services in its retainer agreement. The Law Firm contends that it was merely attempting to provide legal assistance to an underserved Spanish speaking population in the Council Bluffs area in need of bankruptcy representation. While this is a laudable goal, the statute does not provide an exception for those efforts.

    The UST also pointed to the need for amended schedules and additional information requested by the chapter 7 trustees as evidence of the attorneys' failure to comply with statutory directives. The transcripts of the 341 meetings do not indicate that these circumstances arose from any efforts by the Law Firm or Melcher to assist any of the debtors in making misrepresentations in their cases. Instead, the need for follow up appears to be due to oversight, misunderstanding or client failures. Such occurrences are not unique. No evidence was presented that suggests that the requested information was not supplied, or that any necessary

corrections to the schedules were not made.  The Iowa cases were all closed as no asset filings

and the debtors received timely discharges.   The evidence provided at the hearing did not

demonstrate that any errors or omissions in the filed schedules were deliberate.

Although counsel was careless, the Court is not convinced that there was a failure to

provide information or promised services to the debtors in any of the Iowa cases.[14]  The Law

Firm took its involvement and oversight in the Iowa cases seriously.  It responded in detail to the

UST inquiries and explained its understanding of the circumstances.  It made no excuses for its

failures and accepted responsibility for its conduct.  The Law Firm also supplemented its written

agreements with the Iowa clients related to Melcher's involvement to the extent there was any

misunderstandings from the verbal information they had previously received.  Going one step

further the Law Firm self-reported to the Nebraska Disciplinary Board seeking guidance on how

to address the issues raised by its involvement in the Iowa cases.  The Court finds VandenBosch

to be credible in the explanation of the steps taken by the Law Firm to insure that any potential

misunderstanding with the debtors in the Iowa cases were addressed and corrected.  As a result,

civil penalties under 526(c)(2) will not be assessed.  *In re Foster*, 586 B.R. 62, 84-85 (Bankr.

W.D. Wash. 2018) (court declined to impose sanctions or civil penalties where steps were taken

to avoid future inaccuracies on prepetition disclosures.).  To the extent Melcher was to appear at

the 341 meetings on the Iowa cases, he performed this function.   Later, it appears he was

involved in providing the requested follow up information and communications with the chapter

7 trustee(s) which led to his assistance with amendments to the schedules.

There is no evidence that the actions of any of the professionals were undertaken with the

intent or result of violating debtor protections or the integrity of the Bankruptcy Code.   The

debtors in the Iowa cases were provided with:   the pre-filing information required under the

Code; the details about how the Law Firm and Melcher would be involved in their cases, and

---

[14] It is plausible to conclude that none of the professionals were especially focused upon a review of the routine and standardized language contained in the official forms generated by the software program that may have resulted in unintended consequences.  Although not part of the evidence, based upon experience and observation, the Court is aware that there is repetitive data that can be entered into a lawyer's registered software program that will populate automatically on all Official Forms prepared in any case.  By way of example, such items might include a law firm or lawyer's signature line, contact information, as well as the some of the standardized services provided, or not provided,  that appear on Official Form 2030.

received adequate legal representation.  Accordingly, the request for civil penalties for violations of 11 U.S.C. §526(c) is denied.

4.        Unauthorized Practice of Law

The UST argues that the Law Firm engaged in the unauthorized practice of law by filing the Iowa cases and urges the Court to formally address this issue.  Local Rule 83.[15] ("LR 83") governs lawyers appearing in the Southern District of Iowa.  According to LR 83(b) a lawyer is qualified for admission to practice in the district if he or she:  1) is admitted to practice in the courts of Iowa and 2) is in compliance with federal continuing legal education requirements.  If these conditions cannot be met, then LR 83(d)(3)[16] becomes applicable which requires attorneys not licensed in Iowa to file Motions Pro Hac Vice ("PHV") for permission to practice in a "particular case" with associated local counsel is required.  Although Melcher refers to himself as local counsel, none of the attorneys involved appear to have discussed utilizing the concept of PHV admission for an attorney from the Law Firm to file the Iowa cases with Melcher acting as associate (or local) counsel.  If that was their intention it is not well established in the record.  Had that course of action been accomplished it would have resolved many, if not all, of the issues that have been raised in these cases.

Under Iowa law attorneys not licensed in Iowa are subject to Iowa Code §602.10111 (2009).[17]  It must be noted that LR 83(d)(3) does not contain similar language or require compliance with this state statute as a condition of appearing in the United States District Court for the Southern District of Iowa.  Rather, the applicable local rule only states that attorneys must "submit to and comply with all provisions and requirement of the Iowa Rules of Professional Conduct, or any successor code adopted by the Iowa Supreme Court."

---

[15] United States District Court, Local Rules of the United States District Courts for the Northern and Southern Districts of Iowa, https://www.iasd.uscourts.gov/local-rules (last visited Aug 23, 2018).

[16] "A lawyer who is not a member of the bar of the district may be admitted to practice in a particular case pro hac vice by filing a motion asking to be admitted pro hac vice.  By asking to be admitted pro hac vice, the lawyer agrees that in connection with the lawyer's pro hac vice representation, the lawyer will submit to and comply with all provisions and requirements of the Iowa Rules of Professional Conduct. . . " Local Rule 83(d)(3).

[17] "Any member of the bar of another state, actually engaged in any cause or matter pending in any court of this state, may be permitted by such court to appear in and conduct such cause or matter while retaining the attorney's residence in another state, without being subject to this article; provided that at the time the attorney enters an appearance the attorney files with the clerk of such court the written appointment of some attorney resident and admitted to practice in the state of Iowa, upon whom service may be had in all matters connected with said action, with the same effect as if personally made on such foreign attorney within this state.  In case of failure to make such appointment, such attorney shall not be permitted to practice as provided in this section, and all papers filed by the attorney shall be stricken from the files."

Although state statutes do not bind this Court, they may be reviewed at a court's discretion for guidance in determining issues related to the practice of law and appearances by counsel.  See *FHC Enters. v. Drevlow (In re Drevlow)*, 221 B.R. 767, 768–69 (B.A.P. 8th Cir. 1998); *In re Jolly*, 313 B.R. 295, 301 (Bankr. S.D. Iowa 2004) (citing *Iowa Supreme Court Comm'n on Unauthorized Practice of Law v. Sturgeon*, 635 N.W.2d 679 (Iowa 2001)). Routinely state law statutes have been applied to address the unauthorized practice of law by non-lawyers filing pleadings.  See *Jones v. Corr. Med. Servs*., 401 F.3d 950, 952 (8th Cir. 2005) (dismissing a suit because a non-attorney filed a complaint on behalf of the estate he administered); *In re Drevlow*, 221 B.R. 767, 769 (8th Cir. B.A.P. 1998) (holding that "actions taken in legal proceedings by non-attorneys are a nullity"); *Li v. Rizzio*, 801 N.W.2d 351, 360 (Iowa Ct. App. 2011) (voiding a personal-injury judgment because the petitioner's father represented him despite not being an attorney).

*In re Babies*[18] involved Georgia residents that hired Illinois counsel to prepare their bankruptcy filings with the understanding that a member of the State Bar of Georgia would act as their counsel of record.  Despite finding that the Illinois attorneys were engaging in practice of law in Georgia, the Court reasoned that the Illinois lawyers would be deemed to be admitted PHV as they were good standing members of the State Bar of Illinois and were adequately representing the debtors in their case.  This may have been a fitting solution here but is not necessary because all of the Iowa cases have been concluded.

Based upon the foregoing, the Court declines to initiate a referral related to the unauthorized practice of law.


It is hereby ORDERED for the reasons stated that the Motions are granted in part and denied in part as follows:.


1.      All fees paid to VandenBosch Law Firm shall be refunded in the Iowa cases no later than 30 days from the date this Order is docketed.  Verification of these refunds shall be supplied to the UST no later than October 1, 2018.  In the event this verification is not timely received, the UST shall inform the Court by way of filed support document to its original Motion.  Failure to comply with this directive may result in an Order to Show Cause to be issued by the Court.

---

[18] *In re Babies*, 315 B.R. 785 (Bankr. N.D. Ga. 2004).

2.      Melcher shall remit the amount of $1,000.00 to Iowa Legal Aid no later than 30 days from the date this Order is docketed.  Verification of this payment shall be supplied to the UST no later than October 1, 2018.  In the event this verification is not timely received, the UST shall inform the Court by way of filed support document to its original Motion.  Failure to comply with this directive may result in an Order to Show Cause to be issued by the Court.

3.      All other requests for relief are denied.

/s/ Anita L. Shodeen
Anita L. Shodeen
U.S. Bankruptcy Judge

Parties receiving this Memorandum of Decision from the Clerk of Court:
Electronic Filers in this Chapter Case